IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TAPLIN LYNN WALDEN,

           Plaintiff,

v.                                     CIVIL ACTION NO. 2:14-cv-12913

STARCON INTERNATIONAL,
INCORPORATED, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**
*(Motion to Dismiss Fourth Amended Complaint)*

Pending before the court is defendants Bayer Corporation and Bayer Cropscience LP's Motion to Dismiss Plaintiff's Fourth Amended Complaint ("Motion to Dismiss") [Docket 249]. For the reasons discussed below, the defendants' Motion to Dismiss [Docket 249] is **DENIED**.

**I.    Background**

This case arises out of alleged injuries sustained by the plaintiff, Taplin Lynn Walden, while working on a pipeline at a business location in Kanawha County, West Virginia, owned and operated by the following defendants: The Dow Chemical Company ("Dow"), Union Carbide Corporation ("Union Carbide"), and Bayer Corporation and Bayer Cropscience, LP (collectively "Bayer"). (Fourth Am. Compl. [Docket 238] ¶ 9). At the time of the alleged accident, the plaintiff was employed by defendant Starcon International, Incorporated ("Starcon"). (*Id.*). The plaintiff claims that the pipeline—known to contain dangerous chemicals—spilled such chemicals onto his person, causing serious and permanent damage to his "psyche, eyes/vision, legs, groin, penis, buttocks, head, brain, shoulder, nervous system, left foot,

left ankle and other body parts." (*Id.* ¶ 15). Although the plaintiff was wearing a protective chemical suit provided by defendants Starcon, Dow, Union Carbide, and Bayer and manufactured and distributed by defendant E.I. DuPont DeNemours and Company ("DuPont"), he still suffered injury. (*Id.* ¶ 13). After being exposed to the chemical, the plaintiff alleges that the defendants—with the exception of DuPont—failed to provide appropriate decontamination and medical care/treatment. (*Id.* ¶¶ 16–17).

Proceeding on the Fourth Amended Complaint [Docket 238], the plaintiff advances the following counts: (1) deliberate intention as to defendant Starcon; (2) negligence as to defendant Dow; (3) negligence as to defendant Union Carbide; (4) negligence as to defendant Bayer Corporation; (5) negligence as to defendant Bayer Cropscience, LP; (6) negligence as to defendant Regulatory Training Center; and (7) negligence and strict liability as to defendant DuPont. (*Id.* ¶¶ 18–38). Presently, Bayer moves to dismiss Count Four, Count Five, and the plaintiff's claims for punitive damages against Bayer pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. to Dismiss [Docket 249]).

**II.    Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(1), a party may file a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss filed under Rule 12(b)(1), the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding into one for summary judgment." *Id.* The court should grant the motion "only if the material jurisdictional facts are not

2

in dispute and the moving party is entitled to prevail as a matter of law." *Id.* Once a party challenges a federal court's subject matter jurisdiction, "the district judge is not obliged to accept the plaintiff's allegations as true and may examine the evidence to the contrary and reach his or her own conclusions on the matter." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 188–98 (3d ed. 2004).

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court stated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements. *Iqbal*, 556 U.S. at 677–78. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from merely possible to probable. *Id*. In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

3

### III. Analysis

#### A. Medical Professional Liability Act

First, Bayer contends that this court lacks subject matter jurisdiction because the plaintiff failed to comply with the pre-suit notice requirements under the West Virginia Medical Professional Liability Act ("MPLA"), codified at W. Va. Code § 55-7B-1 *et seq*. In response, the plaintiff argues that the Fourth Amended Complaint includes various allegations independent of those relating to medical treatment that are sufficient to state a cause of action for negligence or recklessness. (Pl.'s Resp. to Bayer's Mot. to Dismiss ("Pl.'s Resp.") [Docket 269], at 3).

The MPLA governs "claims resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." Syl. pt. 3, *Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 609 S.E.2d 917 (W. Va. 2004). The Act defines both "health care facility" and "health care provider" as follows:

> "Health care facility" means any clinic, hospital, pharmacy, nursing home, assisted living facility, residential care community, end-stage renal disease facility, home health agency, child welfare agency, group residential facility, behavioral health care facility or comprehensive community mental health center, intellectual/developmental disability center or program, or other ambulatory health care facility, in and licensed, regulated or certified by the State of West Virginia under state or federal law and any state-operated institution or clinic providing health care and any related entity to the health care facility.
>
> "Health care provider" means a person, partnership, corporation, professional limited liability company, health care facility, entity or institution licensed by, or certified in, this state or another state, to provide health care or professional health care services, including, but not limited to, a physician, osteopathic physician, physician assistant, advanced practice registered nurse, hospital, health care facility, dentist, registered or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist, speech-language pathologist and audiologist, occupational therapist, psychologist, pharmacist, technician, certified nursing assistant, emergency medical service personnel, emergency medical services

>authority or agency, any person supervised by or acting under the direction of a licensed professional, any person taking actions or providing service or treatment pursuant to or in furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment; or an officer, employee or agent of a health care provider acting in the course and scope of the officer's, employee's or agent's employment.

W. Va. Code §§ 55-7B-2(f), (g).

While the Fourth Amended Complaint makes brief reference to medical care, (*see* Fourth Am. Compl. [Docket 238] ¶¶ 30(l), 30(x), 32(l), 32(x)), nowhere within the four corners of his pleading does the plaintiff state or suggest that Bayer is a medical facility or provider. (*See id.* ¶¶ 5–6 (describing Bayer merely as a corporation licensed to do business in West Virginia)). In fact, Bayer itself points out that the plaintiff has failed to identify a health care provider in this case or any specific medical care rendered. (Bayer's Mem. in Supp. of their Mot. to Dismiss [Docket 250], at 8 n.2). The plaintiff frames his allegations against Bayer as negligence claims, which include twenty four separate "particulars" that make no reference to medical care. (*Id.* ¶¶ 30, 32). And in response to Bayer's motion, the plaintiff emphasizes that Bayer engaged in "gross industrial misconduct" rather than "medical negligence." (Pl.'s Resp. [Docket 269], at 2)

Although failing to specifically plead a claim under the MPLA does not necessarily preclude application of the Act, *Blankenship v. Ethicon, Inc.*, 656 S.E.2d 451, 458 (W. Va. 2007), the facts as alleged in the Fourth Amended Complaint do not allow me to draw the reasonable inference that the plaintiff intends to bring a medical-malpractice claim against Bayer or that Bayer would be liable for such a claim. Merely determining that these allegations *possibly* fall within the purview of the MPLA is a stretch, and thus, the essential *plausibility* is completely lacking. *See Iqbal*, 556 U.S. at 678–79. Because I **FIND** the MPLA inapplicable here, the

5

plaintiff was not required to comply with the Act's notice or substantive requirements. Accordingly, Bayer's motion with regard to the MPLA is **DENIED**.

### B. Punitive Damages

Bayer also contends that the plaintiff's allegations do not rise to the level of conduct necessary to justify a reward of punitive damages.

In West Virginia, punitive damages are available where there is "gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others[.]" Syl. pt. 1, *Smith v. Perry*, 359 S.E.2d 624, 625 (W. Va. 1987). Here, the plaintiff alleges that Bayer engaged in gross negligence, recklessness, and willful and wanton conduct causing him to suffer severe and permanent damage. (Fourth Am. Compl. [Docket 238] ¶¶ 30, 32).

Although Bayer contends that the plaintiff's claims for punitive damages are not adequately supported by factual allegations, such claims "are not required to be pled with specificity." *Durbin v. Ball Corp.*, No. 5:07CV115, 2008 WL 2704587, at *2 (N.D. W. Va. July 3, 2008) (denying defendant's motion to dismiss punitive damages claims). Construing the allegations in the light most favorable to the plaintiff, I cannot conclude at this stage that no set of facts exists entitling the plaintiff to punitive damages. For example, the plaintiff claims Bayer failed to warn him of the *known* dangerous chemicals located in the pipeline he was working on when injured. (Fourth Am. Compl. [Docket 238] ¶¶ 30(a), 32(a)). Through further discovery, this allegation could potentially rise to the level of "aggravated conduct necessary for punitive recovery." *Durbin*, 2008 WL 2704587, at *2. Accordingly, Bayer's motion with regard to punitive damages is **DENIED**.

**IV.     Conclusion**

For the reasons discussed above, the defendants' Motion to Dismiss [Docket 249] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     July 27, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE